IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Liliana E. Pazmino,                    )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )     Case No. 1:09cv1173(GBL)
                                       )
LaSalle Bank, N.A., as Trustee         )
for Lehman XS Trust Mortgage           )
Pass-Through Certificates,             )
Series 2006-19 c/o Bank of             )
America, N.A., a federally             )
chartered bank, successor by           )
merger to LaSalle Bank, N.A.,          )
et al.,                                )
                                       )
          Defendants.                  )

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants LaSalle Bank,

N.A., as Trustee for Lehman XS Trust Mortgage Pass-Through

Certificates, Series 2006-19 ("LaSalle"); Lehman XS Trust 2006-

19 ("Lehman"); and Aurora Loan Service, LLC's ("Aurora") Motion

to Dismiss the Amended Complaint (Dkt. No. 38)[1] and Defendants

LaSalle, Lehman, Aurora, and MERS's Motion to Strike Notice of

Supplemental Exhibit (Dkt. No. 56).  This case concerns

Plaintiff's allegations that Defendants improperly instituted a

non-judicial foreclosure proceeding on her home.  There are five

---

[1] Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") joined the
Motion to Dismiss the Amended Complaint.  (Dkt. No. 49.)

issues before the Court.[2]  The first issue is whether Ms. Pazmino
sufficiently alleges a claim for declaratory relief where the
foreclosure sale has already occurred but she asks the Court to
now declare that the foreclosure on her property is void and
that none of the Defendants has any right, title, or interest in
the First Promissory Note.  The second issue is whether Ms.
Pazmino sufficiently alleges a similar claim for declaratory
relief as to the Second Promissory Note.  The third issue is
whether Ms. Pazmino states a plausible quiet title claim where
she acknowledges that she defaulted on the promissory notes.
The fourth issue is whether Ms. Pazmino sufficiently states a
claim for fraud on the state court under section 8.01-428 of the
Virginia Code where she alleges that Aurora, MERS and ALG
committed fraud on the state circuit court by misrepresenting
their authority to conduct the foreclosure.

　　　The Court grants Defendants' Motion to Dismiss Counts I,
II, IV, V, and VI of the Amended Complaint.  The Court grants
Defendants' Motion as to Counts I and II because declaratory
relief is not available where the alleged wrongs have already
been suffered and, alternatively, because Plaintiff fails to
state plausible grounds for declaratory relief.  The Court

---

[2] A fifth issue is presented with regard to Defendants' Motion to Dismiss
Count V (Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15
U.S.C. §§ 1692, et seq. (2000)).  However, Plaintiff withdrew the claim and
thus the Court dismisses Count V without analyzing the issue presented.
(Pl.'s Opp'n 26.)

grants Defendants' Motion as to Count IV because the facts
Plaintiff alleges fail to plausibly suggest that she has
superior title since Plaintiff admits that she has not paid her
mortgage in full and the note has not been cancelled or
released. The Court grants Defendants' Motion as to Count VI
because the Amended Complaint fails to allege sufficient facts
to establish a fraud on the court claim under section 8.01-428
of the Virginia Code.

## I. BACKGROUND

This action arises from a residential mortgage foreclosure.
Ms. Liliana Pazmino purchased the property located at 3752 Mary
Evelyn Way, Alexandria, Virginia 22309 (the "Property") on
September 19, 2006. She signed two deeds of trust and two
promissory notes in the amounts of $502,448.00 ("First
Promissory Note") and $62,800.00 ("Second Promissory Note"),
respectively, each naming CTX Mortgage Company, LLC ("CTX") as
the Lender and MERS as the beneficiary.[3]

In 2008, Ms. Pazmino began receiving demands for payment
and threats of foreclosure from Aurora and ALG Trustee, LLC
("ALG"), who alleged that the first loan was in default.[4] On or

---

[3] The first Deed of Trust (the "Deed") indicates that MERS is also the
"nominee for Lender and Lender's successors and assigns." (Deed 4.)

[4] Plaintiff does not allege that her loans were current when she received the
demands. In fact, she admits that she "owes *someone* money." (Pl.'s Opp'n
11.)

about October 14, 2008, Ms. Pazmino, through counsel, sent out a "Qualified Written Request" ("QWR") pursuant to the FDCPA and Section 6 of the Real Estate Settlement Procedures Act ("RESPA") to determine the status of the First Promissory Note.[5]  On January 5, 2009, Ms. Pazmino received a notice of a foreclosure sale date of January 19, 2009.  On January 13, 2009, Ms. Pazmino filed a petition for an injunction to stay the foreclosure proceeding in the Circuit Court for Fairfax County against Aurora and MERS.  On January 23, 2009, Aurora responded to the QWR and notified Ms. Pazmino that the owner of the First Promissory Note was LaSalle in trust for Lehman.  Aurora also provided copies of the First Promissory Note, the Deed, other documents executed at closing, and the payment history of the account.[6]  The Deed[7] states that "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and

---

[5] The Amended Complaint does not specify to whom Plaintiff sent the QWR.

[6] In the original Complaint, Plaintiff alleged that Aurora notified her that "as of December 1, 2006, the servicing of her 1st trust mortgage loan was assigned, sold, or transferred" from CTX to Aurora.  (Compl. ¶ 22.)  This allegation has been omitted from the Amended Complaint.

[7] Plaintiff references and relies on the terms of the Deed in the Amended Complaint.  In addition, Plaintiff does not challenge the authenticity of the Deed as attached to Defendants' Motion to Dismiss the Amended Complaint.  Therefore, the Court can consider this document in deciding the current motion.  *See American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (stating that in deciding whether to dismiss a complaint, a court may consider a document that is attached to a defendant's motion to dismiss if the document is "integral to and explicitly relied on in the complaint" and "the plaintiffs do not challenge its authenticity." (citing *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

4

Lender's successors and assigns) and the successors and assigns
of MERS." (Deed 4.) The Deed also provides

> Borrower understands and agrees that MERS holds only legal
> title to the interests granted by Borrower in this Security
> Instrument, but, if necessary to comply with law or custom,
> MERS (as nominee for Lender and Lender's successors and
> assigns) has the right to exercise any or all of these
> interests, including, but not limited to, the right to
> foreclose and sell the Property, and to take any action
> required of Lender including, but not limited to releasing
> and canceling this Security Instrument.

(Deed 4.) The Deed further provides "[t]he [First Promissory]
Note or a partial interest in the Note (together with this
Security Instrument) can be sold one or more times without prior
notice to Borrower." (Deed 13.)

After an evidentiary hearing conducted on February 12,
2009, the Circuit Court for Fairfax County granted Defendants'
motion to strike, dissolved the *ex parte* injunction to stay
foreclosure, and dismissed the case with prejudice. (Aurora's
Mot. to Dismiss Compl. Ex. B.) The property was foreclosed on
August 10, 2009.

On August 10, 2009, Ms. Pazmino filed a complaint in the
Circuit Court for Fairfax County alleging: (1) Defendants
violated the FDCPA during the foreclosure process; (2) an
entitlement to a judgment declaring the foreclosure unlawful;
(3) ALG breached its fiduciary duty during the foreclosure
process; (4) the title of the Property was vested in Plaintiff
alone; and (5) MERS and Aurora fraudulently misrepresented their

authority to conduct the foreclosure. On October 16, 2009, Aurora removed the action to this Court pursuant to 28 U.S.C. § 1331. Thereafter, Aurora moved the Court to dismiss the Complaint for failure to state a claim against Aurora upon which relief could be granted. The Court granted the motion on November 20, 2009. On January 8, 2010, Ms. Pazmino filed an Amended Complaint which includes the following counts:

Count I (Declaratory Action on the First Trust Note), Defendants CTX, LaSalle, Lehman, Aurora and MERS;

Count II (Declaratory Action on the Second Trust Note), Defendant CTX and any named Defendant claiming an interest;

Count III (Breach of Fiduciary Duty), Defendant ALG;

Count IV (Quiet Title), any competing interest;

Count V (Violation of the FDCPA), Defendants Equity and Countrywide;[8] and

Count VI (Void Judgment by Fraud), Defendants Aurora, MERS, and ALG.

Defendants LaSalle, Lehman, Aurora, and MERS (collectively, "Defendants") now move the Court to dismiss Counts I, II, IV, V, and VI of the Amended Complaint.

---

[8] Equity and Countrywide are not named defendants in this suit. It appears to the Court that Plaintiff actually alleges Count V against Defendants ALG and Aurora.

## II. STANDARD OF REVIEW

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (internal citations omitted); *see* FED. R. CIV. P. 12(b)(6). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal citations omitted).

In order to survive a Rule 12(b)(6) motion to dismiss a complaint must set forth "a claim for relief that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the

7

court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

III.  ANALYSIS

The Court grants Defendants' Motion to Dismiss Counts I and II because a declaratory action cannot be used to redress alleged past wrongs and, alternatively, because Plaintiff fails to allege facts plausibly suggesting an entitlement to declaratory relief.  The Court dismisses Count IV because Plaintiff fails to sufficiently plead superior title.  The Court dismisses Count VI because Plaintiff fails to sufficiently allege facts that establish a fraud on the court claim.  The Court analyzes each count in order below.

## A.   Count I:  Declaratory Action - First Trust Note

The Court grants Defendants' Motion to Dismiss as to Count I because declaratory relief is inappropriate as the foreclosure has already occurred and because the Amended Complaint fails to set forth facts establishing plausible grounds for declaratory relief.  Federal Rule of Civil Procedure 57 provides that the federal rules "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." FED. R. CIV. P. 57.  Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[9] "[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation," and are untimely if the questionable conduct has already occurred or damages have already accrued.  *See The Hipage Co, Inc.*, 589 F. Supp. 2d at 615.

Here, Plaintiff asks the Court to void the foreclosure "Deed of Sale" and declare that "none of the Defendants has any

---

[9] Plaintiff's Amended Complaint cites to Virginia law as the grounds for her declaratory actions (Counts I and II). However the federal rules apply to these claims after removal.  *See The Hipage Co, Inc. v. Access 2 Go, Inc.*, 589 F. Supp. 2d 602, 614 (E.D. Va. 2008) (applying Declaratory Judgment Act to a declaratory action which was originally filed in state court and was subsequently removed to federal court).

right, title, or interest in the First Promissory note." (Am. Compl. ¶ 15.) However, the Property was foreclosed on August 10, 2009, as a result of Plaintiff's admitted default on the loans.[10] Thus, any wrong Plaintiff suffered as a result of the allegedly deficient foreclosure has already occurred. Therefore, a declaratory judgment at this stage is inappropriate.[11]

Two cases with near identical facts were brought in this District and dismissed on similar grounds. *See Merino v. EMC Mortgage Corp.*, No. 1:09-cv-1121, 2010 WL 1039842 (E.D. Va. Mar. 19, 2010) (O'Grady, J.); *Horvath v. Bank of New York*, No. 1:09-cv-1129, 2010 WL 538039 (E.D. Va. Jan. 29, 2010) (Trenga, J.). Like Plaintiff, the homeowners in *Merino* and *Horvath* filed suits against financial institutions alleging a variety of claims based on the foreclosure of their homes following a default on their mortgage loans. *Merino*, 2010 WL 1039842, at *1; *Horvath*, 2010 WL 538039, at *1. In *Merino*, the homeowner sought declaratory relief that "none of the Defendants has any right,

---

[10] The Amended Complaint reads "Defendants, having provided conflicting information concerning the identity of the true owner of the Promissory Notes and/or the true party in interest, Plaintiff refused to pay to them and Defendants proceeded to foreclose on Plaintiff's Property" (Am. Compl. ¶ 49) and "the foreclosure . . . occurred on August 10, 2009" (Am. Compl. ¶ 51).

[11] Even if Virginia law applied here, the Court would dismiss Count I because declaratory relief is unavailable under section 8.01-184 of Virginia Code where the "claims and rights asserted have fully matured, and the alleged wrongs have already been suffered." *Bd. of Supervisors v. Hylton Enters.*, 221 S.E.2d 534, 537 (Va. 1976) (citation omitted); *see also Liberty Mut. Ins. Co. v. Bishop*, 177 S.E.2d 519, 524 (Va. 1970) (declaratory judgment is not the correct cause of action when the rights and various duties of the parties have matured).

title, or interest" in the promissory notes. 2010 WL 1039842,
at *4. In *Horvath*, the homeowner sought declaratory relief that
the foreclosure deed of sale was void. 2010 WL 538039, at *1.
In both cases, the court noted that the underlying purpose of
declaratory relief is to guide parties' *future* conduct. *See*
*Merino*, 2010 WL 1039842, at *4 ("a declaratory judgment is an
inherently forward-looking mechanism, intended to guide parties'
behavior in the future"); *Horvath*, 2010 WL 538039, at *1
("[d]eclaratory relief is reserved for forward looking
actions"). Both the *Merino* and *Horvath* courts therefore held
that declaratory relief was not appropriate because the property
had already been foreclosed. *Merino*, 2010 WL 1039842, at *4;
*Horvath*, 2010 WL 538039, at *1.

Furthermore, even if Plaintiff's declaratory action was
appropriate, Plaintiff fails to set forth plausible facts
showing her entitlement to declaratory relief. Plaintiff argues
that she is entitled to declaratory relief for three reasons:
(1) Defendants lack the authority to enforce the terms of the
Deed; (2) Defendants lacked standing to institute the
foreclosure proceedings because they could not prove Article III
injury; and (3) Defendants could not foreclose on the Property
because of the prohibition on double recovery. The Court
rejects each of these arguments in turn.

First, Plaintiff argues that Defendants have no authority to enforce the terms of the First Deed of Trust because, according to Plaintiff, only the Lender or the successor in interest to the Lender is authorized to remove and appoint substitute trustees to foreclose on the Property. The Court finds this argument unavailing because the Deed authorizes MERS to foreclose the Property in the event that Plaintiff defaulted on the loan. The Deed states that "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." (Deed 4.) The Deed also provides "if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to releasing and canceling this Security Instrument."[12] (Deed 4.) Under the terms of the Deed, MERS has two roles: beneficiary and nominee for Lender. By signing the Deed, Plaintiff agreed that MERS, as nominee for Lender and Lender's successors and assigns, had the right to foreclose the Property and recognized that MERS could

---

[12] Plaintiff alleges Aurora informed Plaintiff that LaSalle is the "current owner of the first trust note" (Am. Compl. ¶ 29), but later alleges that none of Defendants is Lender under the Deed (Am. Compl. ¶¶ 61-64). For purposes of this argument, the Court uses the term "Lender" instead of a specific entity that is in fact the Lender or Noteholder.

12

take any action required of Lender. Furthermore, Plaintiff

makes no legally-supported argument and pleads no facts in the

Amended Complaint as to why MERS as nominee did not have the

right to foreclose and sell the Property in accordance with law

or custom.[13]  As such, Plaintiff's allegation that none of

Defendants have the authority to enforce the Deed is untenable.

In *Ruiz v. Samuel I. White, P.C., et al.*, No. 1:09-cv-688,

2009 WL 4823933, at *1 (E.D. Va. Dec. 11, 2009) (Ellis, J.), the

court examined a similar issue and found that MERS, as the

nominee, had the authority to appoint successor trustees under

the plain terms of the deed of trust.  In that case, a homeowner

who defaulted on her mortgage loan alleged MERS lacked authority

to appoint a substitute trustee to conduct a foreclosure

proceeding on her property.  *Id.*  The *Ruiz* court dismissed the

claim because according to the deed of trust, "MERS (as nominee

for Lender and Lender's successors and assigns) has the right:

to exercise any or all of those interests, including, but not

limited to, *the right to foreclose and sell the Property.*"  *Id.*

---

[13] Plaintiff argues that under section 55-59(9) of Virginia Code, MERS, as the
beneficiary, cannot appoint a substitute trustee to conduct the foreclosure
proceedings.  Section 55-59(9) states "[t]he party secured by the deed of
trust, or the holders of greater than fifty percent of the monetary
obligations secured thereby, shall have the right and power to appoint a
substitute trustee or trustees for any reason."  VA. CODE. ANN. § 55-59(9)
(2009).  According to Plaintiff, MERS lacked the power as beneficiary to
appoint a substitute trustee because it was not entitled to greater than
fifty percent of the obligations due under the First Note.  However,
Plaintiff, who signed the Deed in 2006 and received a copy of the Deed and
other document on January 23, 2009, knew that MERS is also the nominee of the
Lender, and that the Deed authorizes MERS to act on behalf of the Lender to
foreclose the Property in the event of a default on the loans.

13

at *2. The *Ruiz* court held "[t]he 'if necessary to comply with law or custom' language does not . . . require that the nominee have the power to act only when directed by law; rather, the nominee may act on behalf of the Lender as authorized by the deed of trust." *Id.* at *1. Similarly, in the current suit, Plaintiff's allegation that Defendants have no right to foreclose the Property fails.

Second, Plaintiff argues that Defendants could not demonstrate standing to institute the foreclosure because they could not prove Article III injury. The Court rejects Plaintiff's standing argument to the extent that Plaintiff uses the term "standing" to refer to a requirement that a secured party first prove in court its right to initiate a foreclosure before the proceedings commence. The fundamental flaw in Plaintiff's argument is that Virginia is a non-judicial foreclosure state. Sections 55-59.1 through 55-59.4, which set forth the procedural requirements for a non-judicial foreclosure, do not require an interested party to prove "standing" in a court of law before initiating the foreclosure process. *See* VA. CODE ANN. § 55-59.1 (requiring notice before sale by trustee to owners, lienors, etc.); § 55-59.2 (requiring advertisement before sale by trustee); § 55-59.3 (specifying contents of advertisement of sale); § 55-59.4 (setting forth powers and duties of trustee in event of sale under or

satisfaction of deed of trust). The Court therefore rejects
Plaintiff's "standing" argument.

Third, Plaintiff asserts that Defendants have already
recovered damages caused by her default and thus Defendants had
no right to foreclose on the Property due to the prohibition
against double recovery. Plaintiff asserts that Defendants have
received pay-outs from mortgage insurance policies or other
credit derivatives. According to Plaintiff, these pay-outs
cured the injury allegedly caused by her default on the loans,
thus, Defendants are barred from double recovery. The Court
rejects Plaintiff's double recovery argument for two reasons.
First, Plaintiff pleads no facts to support her allegations.
"[A] plaintiff's obligation to provide the 'ground' of . . .
'entitle[ment] to relief' requires more than labels and
conclusions." *Twombly*, 550 U.S. at 555 (citations omitted).
Legal conclusions must be supported by factual allegations and
the "[f]actual allegations must be enough to raise a right to
relief above the speculative level," *id.*, as the Supreme Court
did not intend to "unlock the doors of discovery for a plaintiff
armed with nothing more than conclusions." *Iqbal*, 129 S.Ct. at
1950.

Here, Plaintiff sets forth only conclusory statements in
support of her double recovery theory. In one sweeping
generalization Plaintiff alleges

the applicable securitized mortgage pool has already been
paid out by one or more of the following; i.) credit
enhancement policies, ii.) overcollateralization, iii.)
loan loss reserves pay-outs, iv.) mortgage default
insurance policies pay-outs, v.) credit default swaps,
and/or vi.) other credit derivatives. These payouts
satisfied the alleged indebtedness which is the subject of
this Complaint.

(Am. Compl. ¶ 79.) However, the Amended Complaint contains no

specific facts plausibly suggesting that any pay-out actually

occurred; that any Defendant received a pay-out as the result of

Plaintiff's default on her loans; or that the pay-outs satisfied

Plaintiff's obligation under the loans. These conclusory

statements do not adequately set forth a claim for relief that

is plausible on its face.

The *Merino* and *Horvath* courts reached a similar result on

this issue. The plaintiffs in *Merino* and *Horvath* raised

identical arguments that, as a result of their default on the

loans, their obligations were satisfied because the default

triggered a pay-out. *Merino*, 2010 WL 1039842, at *4; *Horvath*,

2010 WL 538039, at *2. The *Merino* and *Horvath* courts held, and

this Court agrees, that "[Plaintiff] provides no factual or

legal basis, and the Court finds none, to support his contention

that because [Plaintiff's] default triggered insurance for any

losses caused by that default or 'credit enhancement,' he is

discharged from the promissory notes and the Property is

16

released from the deeds of trust." *Merino*, 2010 WL 1039842, at
*4; *Horvath*, 2010 WL 538039, at *2.

Second, the Court finds the cases cited by Plaintiff in
support of her "double recovery" argument irrelevant on these
facts.  Plaintiff relies on *Nizan v. Wells Fargo Bank Minnesota
National Ass'n*, 650 S.E.2d 497 (Va. 2007), for the proposition
that Defendants who received pay-outs cannot foreclose on the
Property because double recovery is prohibited in Virginia.  In
*Nizan*, a trustee of a real estate investment trust acquired an
apartment loan as part of a securitized mortgage loan pool.  *Id.*
at 499.  After the loan went into default, the trustee
foreclosed on the property.  *Id.*  The trustee sued the guarantor
to recover a deficiency after the foreclosure.  *Id.*  Upon
learning that the trustee had settled with the lender regarding
the loan pool, the guarantor then sought additional discovery.
*Id.* at 500.  The Supreme Court of Virginia discussed the common
law defense of "double recovery" and stated that "a party with
two valid causes of action is entitled to 'seek compensation in
each, [but is], nonetheless, estopped from collecting the full
amount [of damages] in the second action if they were partially
paid therefor in the first.'"  *Id.* at 502 (citation omitted).

*Nizan* has minimum value here for two reasons.  First,
although *Nizan* provides for a double recovery defense, *Nizan*
focuses on a dispute between a trustee and a guarantor over a

deficiency after a foreclosure. Here, however, Plaintiff cites
no cases extending this defense to apply to actions challenging
the legitimacy of a foreclosure. The *Merino* court reached a
similar conclusion. *See Merino*, 2010 WL 1039842, at *4 n.6
(rejecting homeowner's double recovery argument because
"Plaintiffs cite no case indicating [double recovery] defense
can be converted somehow into a basis on which to bring a claim
before this Court."). Second, even if the double recovery
theory applies here, as mentioned above, "Plaintiffs'
allegations on this issue are completely naked and 'devoid of
further factual enhancement' and provide no plausible basis" for
the relief she seeks. *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949).

In short, the Amended Complaint contains no facts that
allow the Court to conclude that, despite her default, Plaintiff
is discharged from the promissory notes and that she alone can
claim title to the Property because of any alleged pay-outs to
Defendants. Therefore, the Court grants Defendants' Motion to
Dismiss Count I because the declaratory action is untimely and
Plaintiff fails to plead plausible grounds for declaratory
relief.

## B. Count II: Declaratory Action - Second Trust Note

The Court grants Defendants' Motion as to Count II for the same reasons it dismissed Count I, above. Count II requests that the Court declare that none of the Defendants has any right, title, or interest in the Second Promissory Note. However, the only facts alleged as to Count II are that (1) Plaintiff entered into a mortgage loan and she began paying her loan (Am. Compl. ¶¶ 15, 18, 19) and (2) the Second Trust Note was placed in an unknown pool or trust (Am. Compl. ¶ 41).[14] These facts are insufficient to show plausible grounds for the requested declaratory relief. Accordingly, the Court grants Defendants' Motion to Dismiss Count II on the same grounds that it dismisses Count I.

## C. Count IV: Quiet Title

The Court grants Defendants' Motion as to Count IV because the Amended Complaint contains no facts supporting Plaintiff's claim of superior title. "An action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." *Maine v. Adams*, 672 S.E.2d 862, 866

---

[14] Although Plaintiff does not explicitly plead that she defaulted on the loan, she does allege "Defendants, having provided conflicting information concerning the identity of the true owner of the Promissory Notes and/or the true party in interest, Plaintiff refused to pay to them and Defendants proceeded to foreclose on Plaintiff's Property." (Am. Compl. ¶ 49.)

19

(Va. 2009). A party asserting a quiet title action must plead that he or she has superior title to the property. *See id.*

Here, Plaintiff alleges no facts that plausibly suggest that she has superior title. In fact, the allegations contained in the Amended Complaint suggest quite the opposite. Plaintiff alleges in conclusory fashion that she is the only party that "can prove legal and equitable ownership interest in the Property." (Am. Compl. ¶ 94.) However, she makes no factual showing that the debt was forgiven, cancelled, or fully paid. In fact, the Amended Complaint admits Plaintiff refused to pay Defendants on the Notes (Am. Compl. ¶ 49) and Plaintiff acknowledges in her Opposition that she still "owes *someone* money" (Pl.'s Opp'n 11). The facts pled in the Amended Complaint do not plausibly suggest that Defendants have no rightful claim to the Property. Plaintiff therefore fails to plead facts showing that she has superior title to the Property.

Moreover, the Court rejects Plaintiff's allegation that, "[g]iven the splitting, selling, trading, and insuring of the pieces of the Notes on the secondary market, the Deeds of Trust are split from the Notes and are unenforceable . . . " (Am. Compl. ¶ 99) for three reasons. First, this allegation is a legal conclusion not entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1940. Second, in arguing against Defendants' Motion to Dismiss, Plaintiff cites no legal

authority supporting her assertion of unenforceability. Third, this allegation contradicts the terms of the Deed and Virginia law.[15] "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course." VA. CODE ANN. § 8.3A-203(b) (2009). The Deed states "[t]he [First Promissory] Notes or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Deed 13.) The language of the Deed indicates that the parties contemplated subsequent transfers of the Note and that the Note and the Deed could be sold together. With each transfer, the right to enforce the Deed passed along with the Note from transferor to transferee. Therefore, the Court is unpersuaded by Plaintiff's argument that the right to enforce the Deed is lost due to the transfer and securitization of the loan. Consequently, the Court grants Defendants' Motion to Dismiss Count IV.

---

[15] Recently, the *Merino* court held, and this Court agrees, that an identical allegation that "given the splitting, selling, trading, and insuring of the pieces of the Notes on the secondary market, the Deeds of Trust are split from the Notes and are unenforceable" failed to provide a plausible basis for relief in view of the settled law of negotiable instruments and the enforcement of deeds of trust securing notes after their negotiation. *See* 2010 WL 1039842 at *2.

## D. Count VI: Void Judgment Obtained by Fraud

The Court grants Defendants' Motion as to Count VI because Plaintiff fails to allege sufficient facts to support her claim of fraud on the state court. Virginia preserves the right of a court of equity to entertain an independent action "to relieve a party from any judgment or proceeding, or to grant relief to a defendant not served with process . . . or to set aside a judgment or decree for fraud upon the court." VA. CODE ANN. § 8.01-428(D) (2009). The elements that must be established in such an independent action are:

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Charles v. Precision Tune, Inc.*, 414 S.E.2d 831, 833 (Va. 1992). "Fraud on the court, no matter which party it affects, should be remedied when appropriate." *Swofford v. Bowles*, No. CH03-12828, 2004 WL 3142307, at *4 (Va. Cir. Ct. June 24, 2004). The party alleging fraud as to the third element must allege (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *Id.* at *5. The challenger of the judgment must

clearly and conclusively establish the existence of fraud, particularly the element of intent.  *Id*.

The Amended Complaint fails to set forth sufficient facts to establish a plausible claim for fraud on the court for three reasons.  First, Plaintiff does not plead sufficient facts pertaining to the fraud element.  The Amended Complaint only alleges that there are discrepancies between the Deed of Trust and the Deed of Substitute Trustee executed by Aurora, ALG and MERS.  Plaintiff does not allege Defendants intended to mislead the circuit court in order to commence or effectuate the foreclosure.  Further, there is no allegation as to whether the state circuit court relied on Defendants' alleged misrepresentation.

Second, the Amended Complaint does not even mention the remaining four *Precision Tune* elements.  Plaintiff does not allege that the circuit court's judgment should not be enforced; nor does she allege that her claims before the circuit court had merit.  The Amended Complaint does not allege that Plaintiff did not have the opportunity to fully litigate the state issue in the Circuit Court for Fairfax County or whether there was an appeal of the circuit court judgment to the Supreme Court of Virginia.  The Amended Complaint does not allege an absence of fault or negligence on the part of Plaintiff; nor does it allege the absence of any adequate monetary remedy at law.

Third, Plaintiff's claim for fraud on the court is based on unsupported theories.  The allegations in Count VI are premised on the theory that Defendants lack authority and standing to foreclose on the Property.  As discussed in Section A, above, this line of argument is unavailing.  Therefore, the Court grants Defendants' Motion to Dismiss Count VI of the Amended Complaint.

IV.   CONCLUSION

The Court grants Defendants' Motion to Dismiss Counts I, II, IV, V, and VI of the Amended Complaint.  The Court grants Defendants' Motion as to Counts I and II because declaratory relief is not available where the alleged wrongs have already been suffered and, alternatively, because Plaintiff fails to state plausible grounds for declaratory relief.  The Court grants Defendants' Motion as to Count IV because the facts Plaintiff alleges fail to plausibly suggest that she has superior title.  The Court grants Defendants' Motion as to Count V as unopposed.  The Court grants Defendants' Motion as to Count VI because the Amended Complaint fails to allege sufficient facts to establish a fraud on the court claim under section 8.01-428 of the Virginia Code.  Accordingly, it is hereby

ORDERED that Defendants' Motion to Dismiss the Amended Complaint is GRANTED.  It is further

ORDERED that dismissal is WITH PREJUDICE as to all Defendants and no further leave to amend will be granted because Plaintiff has had two full opportunities to plead her case and the Court's analysis set forth herein demonstrates that further pleading would be futile as a matter of law. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). It is further

ORDERED that Defendants LaSalle, Lehman, Aurora, and MERS's Motion to Strike Notice of Supplemental Exhibit is GRANTED for the reasons set forth in the Memorandum in Support.

The Clerk is directed to forward a copy of this Order to counsel.

Entered this 20th day of May, 2010.

Alexandria, Virginia

/s/

Gerald Bruce Lee
United States District Judge